UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re

Alexander H. Hyatt,

                         Debtor.
--------------------------------------------------------X

                                              Case No. 19-46250-NHL

                                              Chapter 7

<u>DECISION</u>

APPEARANCES:

Bruce Weiner, Esq.
Rosenberg, Musso & Weiner LLP
P.O. Box 130
Huntington Station, NY 11746
Attorney for Trustee

Alexander Hyatt
601 East 19th Street, Apt. 4L
Brooklyn, NY 11226
*Pro Se* Debtor

Peter A. Sklarew, AUSA
Noah D. Glover-Ettrich, AUSA
U.S. Department of Justice
Tax Division
P.O. Box 55
Ben Franklin Station
Washington, D.C. 20044
Attorney for the Internal Revenue Service

NANCY HERSHEY LORD
United States Bankruptcy Judge

This matter comes before the Court on the motion (the "Motion") of Robert J. Musso, the chapter 7 trustee (the "<u>Trustee</u>") for the estate of Alexander H. Hyatt (the "<u>Debtor</u>"), seeking approval of a stipulation between the Trustee and the Internal Revenue Service (the "<u>IRS</u>") regarding the distribution of the proceeds of sale of the Debtor's real property located at 601 East 19th Street, Brooklyn, NY (the "<u>Property</u>"). The IRS joined in support of the Motion, and the Debtor opposed the Motion. For the following reasons, the Motion is denied to the extent it seeks to recover costs and expenses pursuant to 11 U.S.C. § 506(c)[1] but granted to the extent it seeks to reduce the payment of the Debtor's homestead exemption by the amount of the nonexempt funds owed to the estate by the Debtor.

## BACKGROUND

### I.    Filing of Petition and Schedules

On October 16, 2019, the debtor, *pro se*, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. [ECF No. 1.][2] On October 30, 2019, the Debtor filed schedules and statements. [ECF No. 15.] On Schedule A/B, the Debtor listed his interest in the Property, with a value of $400,000.  [Schedule A/B, ECF No. 15.]  The Debtor also listed $17,000 in cash, as well as other personal property with a combined value of $3,500. [Schedule A/B, ECF No. 15.]  On Schedule C, the Debtor claimed a state law homestead exemption with respect to the Property of 100% of the fair market value, up to the statutory limit, but did not specify the statutory basis for such exemption.  [Schedule C, ECF No. 15.]  At the time of the bankruptcy filing, New York Civil Practice Law & Rules ("NY CPLR") § 5206 provided for a homestead exemption of $170,825.00. However, the Debtor also indicated on Schedule C that he was not claiming a homestead

---

[1] Unless otherwise indicated, all statutory references herein are to the Bankruptcy Code, Title 11, U.S.C.
[2] Citations to "ECF No. []" are to documents filed in Case No. 19-46250-nhl, identified by docket entry number.

1

exemption greater than $170,350. [Schedule C, ECF No. 15.]   The Debtor did not claim an exemption with respect to the $17,000.[3]

II.    Nonexempt Funds

After the filing of the Debtor's schedules, the Trustee demanded that the Debtor turn over the $17,000 in nonexempt cash. After the Debtor failed to do so, the Trustee sought an order of this Court directing the turnover, which was opposed by the Debtor. [ECF Nos. 24 and 29.]  After hearings on the motion were held on February 5, 2020, and February 27, 2020, the Court issued an order on March 8, 2020, overruling the Debtor's objection, granting the Trustee's motion, and directing the Debtor to turn over the funds within 10 days (the "Turnover Order").  [ECF No. 37.]

The Debtor failed to comply with the Turnover Order.  Consequently, the Trustee filed a motion on August 3, 2020, seeking to hold the Debtor in contempt (the "First Contempt Motion"). [ECF No. 43.]  On August 13, 2020, and September 30, 2020, the Debtor filed opposition to the First Contempt Motion.  At a hearing held on October 1, 2020, the Debtor appeared and stated that he spent some of the $17,000 and that only $10,240 remained. At that hearing, the Court "so-ordered" the record (1) holding the Debtor in contempt for failing to comply with the Turnover Order; (2) directing the Debtor to turn over the remaining funds by October 8, 2020; (3) imposing a sanction of $50/weekday until the Debtor paid the $10,240 along with accrued sanctions to the Trustee; and (4) ruling that the Debtor's distribution on account of his homestead exemption would be reduced by the $6,760 the Debtor improperly spent of the nonexempt funds.  (Tr. 10/1/2020 at 14, ECF No. 62.)[4]  On October 5, 2020, the Court entered a written order consistent with the rulings made at the October 1, 2020 hearing (the "First Contempt Order"). [ECF No. 53.]  The

---

[3] Pursuant to NY CPLR § 5205(a)(9), the Debtor is not entitled to claim an exemption in cash when a homestead exemption is claimed. No objections were filed to the Debtor's claimed homestead exemption.
[4] "Tr." refers to the transcript of the hearing held on the date indicated.

Debtor appealed the First Contempt Order [ECF No. 56], which was affirmed by the District Court on July 20, 2022 [ECF No. 117], and recently further affirmed by the Second Circuit on January 15, 2025 [ECF No. 180].  To date, the Debtor has failed to turn over any portion of the nonexempt funds and has failed to pay the Trustee any of the awarded sanctions.

III.    IRS's Proof of Claim

The IRS filed Proof of Claim No. 1 on October 28, 2019, which was amended multiple times. The most recent amendment, filed November 17, 2020, reflects a total claim amount of $163,149.31. Of that sum: (1) $22,625.77 is secured and is based on income taxes, interest, and penalties for 2003, for which a pre-petition notice of federal tax lien was filed; (2) $18,108.02 is a priority unsecured claim under § 507(a)(8), and is based on estimated income tax liability for 2016, 2017, and 2018; and (3) the remaining $122,415.32 is a general unsecured claim, and is based on income taxes for 2004, 2005, and 2012, as well as penalties on the 2003, 2005, and 2012 income taxes, and other civil penalties and interest.

The IRS's proof of claim notes:

> The lien for the 2003 period in the Secured Claims section includes penalties and there is also a prepetition lien for a civil penalty of the period ended 12/31/2005 in the amount $25,000 plus interest to petition date of $9,409.15, but the IRS elects to allocate its liens for these penalties not to property of the estate and instead apply them exclusively to any proceeds of property subject to the debtor's homestead exemption pursuant to 11 USC 522(c)(2)(B). The amount of the penalties subject to the liens for these periods totals $83,945.61 (and is part of the $86,611.77. figure listed as "Penalty to date of petition on unsecured general claims (including interest thereon)" in the Unsecured General Claims section. As also noted in that section, the Service claims a right to additional proceeds subject to the homestead exemption for various liabilities that, although not secured by prepetition lien notices, are excepted from discharge. See 11 USC 522(c)(1).

*       *       *

> The Service claims a right to any exempt proceeds from a sale of the Debtor's home for all of the following: (1) the penalties for the 2003 tax year pursuant to 11 USC 522(c)(2)(B) ($2,162.80 plus postpetition interest); (2) the civil penalty for the period ended 12/31/2005 pursuant to 11 USC 522(c)(2) (B) ($34,934.79 plus postpetition interest); (3) the civil penalty for the period ended 09/30/2019 assessed postpetition pursuant to 11 U.S.C. 362(b)(9)(D) and 523(a)(7) ($27,392.00 plus postpetition interest); (4) the unsecured 2004, 2005, and 2012 income tax liabilities (excluding penalties) pursuant to 11 USC 522(c)(1) and 523(a)(1)(C) ($30,646.39 combined, plus postpetition interest); and (5) any taxes that may be assessed for any postpetition periods (currently, tax for the 2019 year is estimated at $7,593) together with any penalties and interest.

[Claim No. #1-6.]

The IRS's brief filed in support of this Motion states that, as of March 8, 2024, the amount of its claim that encumbers the Debtor's homestead exemption is $179,439.56. [IRS Brief at 3, ECF No. 176.]

IV.    Sale of the Real Property

On November 22, 2019, the Court authorized the Trustee to retain MYC & Associates, Inc. ("MYC") as real estate broker to market and sell the Property. [ECF No. 23.]

On March 10, 2020, the Trustee filed a motion for an order directing the Debtor to cooperate with the Trustee with respect to the inspection and sale of the Property (the "Sale Cooperation Motion"). [ECF No. 38.]  The Debtor opposed the Sale Cooperation Motion.  [ECF No. 40.] Hearings on the Sale Cooperation Motion were held and adjourned, and the motion was marked off the calendar at the October 1, 2020 hearing when the Court issued its ruling on the First Contempt Motion.  [Tr. 10/1/2020 at 32, ECF No. 62.]

On November 16, 2020, the Trustee filed a letter requesting that the Sale Cooperation Motion be restored to the calendar [ECF No. 64], and on November 19, 2020, the Trustee filed an amended notice of motion for the Sale Cooperation Motion, making it returnable January 7, 2021

[ECF No. 67.]  After hearings held on January 7, 2021, and January 20, 2021, the Court issued an order on January 22, 2021, directing the Debtor to cooperate with the Trustee in connection with the sale of the Property by permitting MYC to inspect the Property (the "Cooperation Order").[5] [ECF No. 71.]

On March 10, 2021, the Trustee filed a motion to, among other things, hold the Debtor in contempt for failing to comply with the Cooperation Order (the "Second Contempt Motion"). [ECF No. 81.] The Debtor opposed the Second Contempt Motion. [ECF No. 94.]  A hearing on the Second Contempt Motion was held on April 22, 2021.  Thereafter, on April 30, 2021, the Court issued an order holding the Debtor in contempt for failing to comply with the Cooperation Order, and providing that the Debtor may purge the contempt if, within 30 days of entry of that order, the Debtor makes an appointment with MYC to inspect the Property and allows the inspection of the Property to take place (the "Second Contempt Order"). [ECF No. 101.]

On June 8, 2021, the Trustee filed a statement representing that the Debtor failed to purge his contempt in accordance with the Second Contempt Order.  Further hearings were held on the Second Contempt Motion and, at hearings held on June 21, 2021, and April 27, 2022, the Debtor stated on the record that he would not voluntarily allow the Trustee and MYC to access and inspect the Property.  Therefore, on June 24, 2022, the Court issued an order that, among other things, found that the Debtor failed to purge his contempt in accordance with the Second Contempt Order, and directed the United States Marshals Service to accompany the Trustee and MYC to inspect the Property.[6] [ECF No. 113.]

---

[5] The Debtor appealed the Cooperation Order [ECF No. 72], which was affirmed by the District Court on July 20, 2022 [ECF No. 117], and further affirmed by the Second Circuit on January 15, 2025 [ECF No. 180].
[6] This order was amended on September 6, 2022, to provide a later date by which the United States Marshals and the Trustee are to effectuate enforcement of that order and to include a "hold harmless" provision.  [ECF No. 118.]

On January 9, 2023, the Trustee filed a motion to, among other things, require the Debtor to vacate the Property. [ECF No. 122.]  The Debtor opposed the motion. [ECF No. 125.]  After a hearing held on February 16, 2023, the Court issued an order on February 27, 2023 that, among other things, (1) authorized the Trustee to settle an order directing the United States Marshals to evict all occupants from the Property in the event the Debtor fails to provide MYC access to conduct open houses of the Property; and (2) authorized the United States Marshals to evict all occupants from the Property in the event they fail to vacate the Property by April 1, 2023. [ECF No. 129.] Ultimately, the United States Marshals evicted the Debtor from the Property.

On April 25, 2023, the Trustee filed a motion for authorization to sell the Property and to approve bidding procedures (the "Sale Motion").  [ECF No. 135.]  The Debtor opposed the Sale Motion. [ECF No. 142.]  After a hearing held on June 1, 2023, the Court issued an order on June 5, 2023, authorizing the Trustee to sell the Property. [ECF No. 144.]  According to MYC's report of sale, the only offer received for the Property was $296,050. [ECF No. 149.] After a hearing held on August 24, 2023, the Court issued an order on September 5, 2023, confirming the sale of the Property. [ECF No. 152.]

Thereafter, on September 24, 2023, the Trustee filed a motion to surcharge the Debtor's homestead exemption by the contempt sanctions imposed under the First Contempt Order, which totaled $39,750 as of the date of that motion (the "Surcharge Motion"). [ECF No. 153].  On October 12, 2023, the Debtor filed opposition to the Surcharge Motion [ECF No. 156], and the Trustee filed a reply on October 16, 2023 [ECF No. 157]. That motion was heard on October 19, 2023, and the Court directed further briefing to address the application of Law v. Siegel, in which the Supreme Court ruled that a debtor's homestead exemption could not be surcharged to compensate the estate for the debtor's misconduct.  Law v. Siegel, 571 U.S. 415 (2014).

Instead of providing further briefing, the Trustee filed this Motion to approve a stipulation of settlement with the IRS.

V.    <u>Terms of the Stipulation</u>

The stipulation between the IRS and the Trustee provides for the distribution of the sale proceeds of the Property, payment of the Trustee's compensation pursuant to Section 326 of the Bankruptcy Code, and payment of certain administrative expenses to be paid pursuant to Section 506(c) (the "Stipulation").

In the Stipulation, the IRS and Trustee agree that:

> to the extent the net sale proceeds left after the mortgage and out-of-pocket selling expenses exceed the exemption amount, the Trustee may use that portion of the proceeds to pay the expenses of administration under § 724(b) of the Bankruptcy Code; *provided however*, that the United States reserves the right then to apply its liens to exempt proceeds up to the full balances owed on any such liens.

[Stipulation ¶ 7, ECF No. 166-1.]

Additionally, the Stipulation has the Trustee and the IRS agreeing that the $170,350 of proceeds constituting the homestead exemption will remain subject to the federal tax liens for the full balances owed on (1) liens where there is a prepetition notice of federal tax lien; (2) liens that arose on assessment and where there is not a prepetition notice of federal tax lien if such debt is nondischargeable; and (3) post-petition liens for post-petition assessments of liabilities.[7] [Stipulation ¶ 7, ECF No. 166-1.]

---

[7] Section 522(c)(2) provides, in pertinent part:
> Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—
> (1) a debt of a kind specified in paragraph (1) . . . of section 523(a) (in which case, notwithstanding any provision of applicable nonbankruptcy law to the contrary, such property shall be liable for a debt of a kind specified in such paragraph);

The Stipulation further provides that, to the extent that the nonexempt net proceeds are insufficient to cover administrative expenses, the Trustee will be entitled to compensation under section 326, to be computed upon the funds distributed as follows:

> (a) to satisfy the mortgage; (b) to pay the 6% commission to the auctioneer; (c) to pay coop maintenance fees understood to exceed $7,000; and (d) to pay the amount allowed by the Court to be distributed to Trustee's counsel as § 506(c) expenses. Compensation under § 326 shall not be computed on any distribution of remaining exempt proceeds to cover the marshal's fees or any other closing costs (such as recordation fees or taxes) or on any distribution of exempt proceeds to the United States or to the Debtor.

[Stipulation ¶ 9; ECF No. 166-1.]

The parties capped the compensation to the Trustee and his counsel that may be collected from the *exempt* funds at $65,350.00, so that the IRS could receive a minimum $105,000 distribution from the exempt proceeds on account of its liens.  [Stipulation ¶ 11, ECF No. 166-1.]

The Trustee estimates that $46,095 in attorney's fees are attributable to the "preservation and liquidation" of the Property, and that $3,000 in expenses were incurred for assistance of the United States Marshals. [Stipulation ¶ 6, ECF No. 166-1.] The Trustee also estimates that approximately $27,215 in fees are attributable to the Trustee's efforts to recover the Debtor's $17,000 of nonexempt cash, which, according to the Trustee, should also be recoverable under § 506(c) because they "were subject to the same federal tax liens, and [as such] attorneys' fees incurred to both may be charged against the combined recovery." [Motion, n.1, ECF No. 166; Stipulation ¶ 5, ECF No. 166-1.

---

(2) a debt secured by a lien that is—
(A)
    (i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and
    (ii) not void under section 506(d) of this title; or
(B) a tax lien, notice of which is properly filed.
11 U.S.C. § 522(c)(1), (2).

The Stipulation's terms are rather convoluted but, boiled down to its essence, it provides that the funds that would be paid to the Debtor as his homestead exemption will be allocated between the Trustee and the IRS. Importantly, the IRS will not credit the Debtor for any of the funds paid to the Trustee out of the exempt proceeds of sale. [Tr. 2/8/24 at 9, ECF No. 175.] Additionally, the settlement contemplates that there will be no money available for a distribution to unsecured creditors. [Motion ¶ 12, ECF No. 166; Stipulation ¶ 9, ECF No. 166-1.]

The Stipulation further provides that, alternatively, if the Court does not allow the recovery of the estate's costs and expenses under § 506(c) as provided by the Stipulation, "$17,000 of the proceeds from the sale may be treated as replacing the $17,000 in cash belonging to the bankruptcy estate that the Debtor absconded with as if an advance payment towards the homestead exemption."  [Mot. n.1, ECF No. 166; See also Stipulation ¶ 10, ECF No. 166-1.]

## **LEGAL STANDARD**

### I. Exemptions

Bankruptcy law serves two important purposes: it gives a debtor a fresh start and provides a debt-collection and distribution scheme for creditors.  In re Morrell, 394 B.R. 405, 409 (Bankr. N.D.W. Va. 2008), aff'd sub nom. Sheehan v. Peveich, 574 F.3d 248 (4th Cir. 2009).  "Balancing a debtor's right to a fresh start against the rights of the debtor's creditors to collect on pre-petition debts is endemic to bankruptcy law." Id.  Section 522 "helps determine what assets are available for the payment of the debtor's creditors, and what assets a debtor will be able to shield from those creditors to effectuate the debtor's financial fresh start." Id.  "[E]xempting property is almost always a detriment to creditors, but it was the explicit goal of the New York Legislature to protect homesteads, notwithstanding creditor interests." In re Ajunwa, No. 11-11363 (ALG), 2012 WL 3820638, at *4 (Bankr. S.D.N.Y. Sept. 4, 2012).

"Except in particular situations specified in the Code, exempt property 'is not liable' for the payment of 'any [prepetition] debt' or 'any administrative expense.'" Law, 571 U.S. at 417–18 (alteration in original) (citing 11 U.S.C. § 522(c), (k)). "[F]ederal law provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Code." Id. at 425. Additionally, "when a debtor claims a *state-created* exemption, the exemption's scope is determined by state law, which may provide that certain types of debtor misconduct warrant denial of the exemption." Id. Therefore, a bankruptcy court may disallow a state-created exemption using an applicable provision of the Bankruptcy Code or non-bankruptcy law. See id. ("Some of the early decisions on which [the trustee] relies . . . are instances in which federal courts applied state law to disallow state-created exemptions."); In re Castellano, 550 B.R. 214, 219 (Bankr. E.D.N.Y. 2016) (overruling an objection to a debtor's claimed exemption because there was "no viable basis for the [exemption] to be disallowed under the Code or applicable non-bankruptcy exemption law"). As such, when a debtor properly invokes an exemption, "the court may not refuse to honor the exemption absent a valid statutory basis for doing so." Law, 571 U.S. at 424. The redistribution of allowed homestead exemption proceeds without statutory authorization is no different than a withdrawal or disallowance of that exemption. See Springel v. Prosser (In re Prosser), Bankr. No. 2006-30009, Civ. No. 3:2013-0087, Civ. No. 3:2013-0010, Civ. No. 3:2013-0056, Civ. No. 3:2013-0057, 2018 WL 3041067, at *7 (D. Vir. Is. June 19, 2018) ("Sale of the exempt property to satisfy a damages award for a debtor who was found in civil contempt would amount to the Bankruptcy Court either withdrawing the homestead exemption or creating an additional exception to § 522's exemptions.").

II. <u>Approval of Settlements</u>

Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee, and after notice and a hearing, the court may approve a compromise or settlement." <u>Fed. R. Bankr. P. 9019(a).</u> "In the Second Circuit, '[b]efore . . . settlements can take effect, . . . they must be approved by the bankruptcy court pursuant to Bankruptcy Rule 9019.'" <u>Liberty Towers Realty, LLC v. Richmond Liberty, LLC</u>, 569 B.R. 534, 538 (E.D.N.Y. 2017) (second omission in original) (quoting <u>Motorola, Inc. v. Off. Comm. of Unsecured Creditors (In re Iridium Operating LLC)</u>, 478 F.3d 452, 455 (2d Cir. 2007)), <u>aff'd</u>, 734 F. App'x 68 (2d Cir. 2018). "The purpose and effect of seeking court approval of a compromise under Rule 9019 is to bind the bankruptcy estate to the terms of any bargain struck by a . . . [trustee] that affects the bankruptcy estate." <u>Id.</u> at 539 (quoting <u>In re Lexington Jewelers Exch. Inc.</u>, No. 08-10042-WCH, 2013 WL 2338243, at *5 n.12 (Bankr. D. Mass. May 29, 2013)).

"The decision to approve or deny a particular settlement involving a bankruptcy estate lies within the discretion of the bankruptcy court." <u>In re Residential Cap., LLC</u>, 497 B.R. 720, 749 (Bankr. S.D.N.Y. 2013) (citing cases). "A court may approve a settlement under Rule 9019 of the Bankruptcy Rules if it is fair and equitable and in the best interests of the estate." <u>In re NII Holdings, Inc.</u>, 536 B.R. 61, 98 (Bankr. S.D.N.Y. 2015) (citing <u>Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414, 424 (1968)).

In making this determination, the Second Circuit has identified the following factors for analysis:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits;
> (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;

(3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;
(4) whether other parties in interest support the settlement;
(5) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement;
(6) the nature and breadth of releases to be obtained by officers and directors; and
(7) the extent to which the settlement is the product of arm's length bargaining.

Iridium, 478 F.3d at 462 (internal quotation marks omitted) (citing cases).

"To be approved, '[t]he settlement need not be the best that the [trustee] could have obtained.'" NII Holdings, 536 B.R. at 99 (quoting In re Adelphia Commc'ns Corp., 368 B.R. 140, 225 (Bankr. S.D.N.Y. 2007)). Instead, the Court must find that the proposed settlement does not "fall[] below the lowest point in the range of reasonableness." In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983) (quoting Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972)).

While the Court must independently evaluate whether the proposed settlement meets the standards for approval, it may also "take into account the [trustee's] business judgment in recommending a settlement as well as the opinions of the [trustee] and the parties to the settlement." NII Holdings, 536 B.R. at 100. See also Residential Cap., 497 B.R. at 750 ("[T]he business judgment of the [trustee] in recommending the settlement should be factored into the court's analysis." (quoting In re MF Glob. Inc., No. 11-2790 MG, 2012 WL 3242533, at *5 (Bankr. S.D.N.Y. Aug. 10, 2012))).

"In evaluating a settlement, '[t]he court may give weight to the trustee's opinion that the settlement is fair and equitable,' but may not simply adopt the [t]rustee's position without making its own independent inquiry." In re Soup Kitchen Int'l Inc., 506 B.R. 29, 37 (Bankr. E.D.N.Y. 2014) (quoting In re Copperfield Invs., LLC, 401 B.R. 87, 92 (Bankr. E.D.N.Y. 2009)); see also In

re Rosenberg, 419 B.R. 532, 536 (Bankr. E.D.N.Y. 2009) ("A court may not simply defer to a [trustee's] judgment, but must independently evaluate the reasonableness of the settlement.")

It is axiomatic that, to approve a settlement, the terms of the settlement must be lawful. See Arrowsmith v. Mallory (In re Health Diagnostic Lab'y, Inc.), 588 B.R. 154, 162 (Bankr. E.D. Va. 2018) (stating that "courts will not approve settlement agreements that are 'illegal, a product of collusion, or against the public interest'" (quoting United States v. North Carolina, 180 F.3d 574, 581 (4th Cir. 1999))); In re Christensen, 561 B.R. 195, 215 (Bankr. D. Utah 2016) ("[S]tipulations cannot be approved if they violate the law."), aff'd sub nom. In re Bird, 577 B.R. 365 (B.A.P. 10th Cir. 2017); In re Telcar Grp., Inc., 363 B.R. 345, 357 (Bankr. E.D.N.Y. 2007) ("To the extent a proposed settlement includes provisions, the enforcement of which would be illegal or against public policy, it matters not whether the settlement is in the best interests of the estate.").

## DISCUSSION

It cannot be disputed that the Trustee has faced numerous obstacles in the administration of this case due to the Debtor's contemptuous behavior. However, the issue is whether this Court can approve a settlement that provides for the recovery of administrative expenses from funds that are subject to the Debtor's homestead exemption by using the vehicle of § 506(c) and the IRS as the conduit.  In a nutshell, the Stipulation provides for the exempt proceeds, which are not reachable by the trustee, but are reachable by the IRS as an exception to exemptions under § 522(c)(2)(B), to be applied to the estate's administrative expenses, with no corresponding reduction of the IRS's claim against the Debtor.  Put simply, the question before the Court is whether the Trustee may accomplish something indirectly that he seemingly cannot accomplish directly by virtue of the Supreme Court's reasoning in Law v. Seigel, 571 U.S. 415 (2014).

The Trustee asserts that the Stipulation should be approved because <u>Law v. Seigel</u>'s prohibition regarding surcharging contempt sanctions against exempt proceeds is inapplicable to expenses recovered from a secured creditor under § 506(c).  At the hearing on this motion, the Trustee explained:

> The source of the funds might have been the Debtor's homestead exemption, but we're not being paid by the homestead exemption. We're being paid by the IRS.  This is money that would not go to the Debtor under any circumstances.

[Tr. 2/8/24 at 5:21-24, ECF No. 175.]

Section 506(c) provides that a trustee "may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c). "Section 506(c) was intended by Congress as a codification of … the equitable principle that a lienholder may be charged with the reasonable costs and expenses incurred by the … trustee which are required to preserve or dispose of the property subject to lien to the extent the lien-holder derives a benefit therefrom." <u>In re Senior-G & A Operating Co.</u>, 957 F.2d 1290, 1298 (5th Cir. 1992) (quoting 3 Collier's on Bankruptcy, ¶ 506.06; <u>see also</u> <u>Marc Stuart Goldberg, P.C. v. City of N.Y. (In re Navis Realty, Inc.)</u>, 193 B.R. 998, 1006 (Bankr. E.D.N.Y. 1996) ("Put another way, the underlying purpose of 11 U.S.C. § 506(c) is that the secured creditor should pay for the benefit it received.").  As explained by the Ninth Circuit:

> [A] § 506(c) surcharge is . . . an assessment against a secured party's collateral. As such, it does not come out of the debtor's estate, but rather comes directly from the secured party's recovery. Consequently, § 506(c) expenses do not fall within the priority scheme of the Bankruptcy Code at all. These expenses are

> paid first out of the proceeds of the sale, before a secured creditor is
> paid.

In re Debbie Reynolds Hotel & Casino, Inc., 255 F.3d 1061, 1067 (9th Cir. 2001) (internal citations and quotation marks omitted).

Absent the consent of the secured creditor, recovery under § 506(c) "is dependent upon [the] ability to establish that such costs and expenses were: (i) reasonable, (ii) necessary, and (iii) provided a direct benefit to the secured creditor." In re Lorick, No. 1-16-45645-NHL, 2018 WL 3854139, at *5 (Bankr. E.D.N.Y. Aug. 9, 2018). See also First Servs. Grp., Inc. v. O'Connell (In re Ceron), 412 B.R. 41, 48 (Bankr. E.D.N.Y. 2009). "[I]f a secured party consents to allowing such administrative expenses, that party may be liable for such expenses even in the absence of conferred benefit, but 'such consent is not to be lightly inferred.'" Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortg. Corp. (In re Blackwood Assocs., L.P.), 153 F.3d 61, 68 (2d Cir. 1998), (quoting General Elec. Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.), 739 F.2d 73, 77 (2d Cir. 1984)).

Put simply, § 506(c) provides a mechanism for the trustee to seek a non-consensual surcharge of sale proceeds for the benefit of the estate to the extent the trustee's efforts benefitted the secured creditor.  In other words, § 506(c) contemplates that the secured creditor will receive less than full payment in satisfaction of its secured claim to pay for the benefit it received from the trustee's liquidation of the collateral. However, in this case, the IRS acknowledged that the payment of the trustee's expenses pursuant to § 506(c) is not reducing the IRS's secured claim against the Debtor at all.  [Tr. 2/4/24 at 9, ECF No. 175.]

The primary cases relied upon by the Trustee in support of the Stipulation are In re Baldridge, 553 F. App'x 598, 599 (6th Cir. 2014) and In re Brown, 851 F.3d 619 (6th Cir. 2017). In Baldridge, the issues on appeal were (i) whether the bankruptcy court properly disallowed the

15

debtors' homestead exemption because there was no equity in the property above the mortgages, and (ii) whether the closing costs recovered by the trustee under § 506(c) created equity in the property subject to the debtors' exemptions. The Sixth Circuit affirmed the lower courts, finding that the "'carve out' itself, recovered by the Trustee upon closing the sale of debtors' property, was not part of the estate that could be subject to debtors' exemptions at the time the bankruptcy case was commenced." Baldridge, 553 F. App'x at 599. As later stated in Brown, the holding of Baldridge is that "Section 522 will not support an exemption on the basis of state-law redemption rights in a piece of property if the proceeds from the sale of that property are 'insufficient to satisfy the prior obligations owed to the secured creditors.'" Brown, 851 F.3d at 625 (quoting Baldridge, 553 F. App'x at 599).

This case is entirely distinguishable from Baldridge. In that case, the issue was whether the debtors were entitled to the homestead exemption at all and, if they were, whether the exemption would attach to the Trustee's recovery under § 506(c). Baldridge, 553 F. App'x 598.

In Brown, one of the questions presented was whether the Supreme Court's decision in Law v. Siegel abrogated the Sixth Circuit's ruling in Baldridge of "no equity-no exemption." Brown, 851 F.3d at 625. Brown held that it did not, concluding that Law v. Siegel was irrelevant to Baldridge's holding: "Whereas Law addressed the extent of the bankruptcy court's discretionary powers under § 105(a), this case addresses the bankruptcy court's interpretation of a specific provision of the Bankruptcy Code." Id. As explained in Brown: "Law does not strip bankruptcy courts of their ability to interpret the Bankruptcy Code; it merely reinforces the common-sense notion that bankruptcy courts may not use their discretionary powers to reach results that are inconsistent with the clear meaning of the Bankruptcy Code." Id.

The Trustee asserts that this case is similar to <u>Brown</u> because, by the time the sale occurred, due to the delay caused by the Debtor's contemptuous behavior, there was little to no equity in the Property to support any exemption. However, <u>Baldridge</u> and <u>Brown</u> are irrelevant to whether the Stipulation between the Trustee and the IRS should be approved. Unlike those cases, where the courts disallowed the debtors' exemptions, the Trustee never sought to disallow the Debtor's homestead exemption, and the time to do so has expired. <u>See</u> Fed R. Bankr. P. 4003(b). Nor does there appear to be any basis for the Court to disallow the exemption, even if a timely objection had been filed, because "[w]hen determining the allowance of an exemption, a court must consider the circumstances as they existed on the petition date." <u>In re Moulterie</u>, 398 B.R. 501, 505 (Bankr. E.D.N.Y. 2008). The question in this case, unlike in <u>Brown</u> and <u>Baldridge</u>, is whether the Trustee may reach that exempt property to fund administrative expenses in the manner sought by the Stipulation.

The Trustee also relies on <u>Desmond v. Edrissi (In re Al-Idrisi)</u>, 634 B.R. 174 (Bankr. D. Mass. 2021), as further support for his position. There, the Bankruptcy Court allowed a carveout for the trustee based on reasonable and necessary expenses of sale that provided for the following:

> [A] guaranteed minimum carve out for general unsecured creditors of the lesser of $20,000 or 20% of the amount of allowed general unsecured claims (the "Creditor Carve Out"), plus 25% of any amount the sale price for the [p]roperty exceeds $590,000, up to 50% of the allowed general unsecured claims. [The Secured Creditor] also agreed to carve-out amounts for professional fees and closing costs approved by the Court. Following Court approval of the itemized deductions for closing costs, professional fees, and the Creditor Carve Out, the remaining sale proceeds (a minimum of $465,000), will be paid to [the Secured Creditor] without further offset or reduction.

<u>Al-Idrisi</u>, 634 B.R. at 178.

But Al-Idrisi does not implicate § 506(c) because the trustee there sought approval for the consensual carveout solely under § 105(a) as a settlement of certain claims or defenses of the estate against the secured creditor, and the trustee argued that it "should be viewed as 'gifting' from the secured creditor." Id. at 180. The question in Al-Idrisi was whether the trustee could sell jointly owned, fully encumbered property through a negotiated carveout with the secured creditor without paying the non-debtor co-owner a share of the carveout under § 363(j). Id. at 182.   The non-debtor co-owner had argued that, "if the secured lender accepts less of the proceeds to satisfy its lien, any amounts paid to the estate should constitute 'proceeds' of the sale that should be divided with him as joint owner." Id. at 180. Notably, it is apparent that the settlement in that case included what the instant Stipulation does not – a reduction of the amount owed to the secured creditor as a result of the payment to the trustee.

Rather, the instant case is similar to Prosser, where, on appeal, the district court held that the trustee may not use exempt sale proceeds to satisfy court-imposed sanctions against the debtor in favor of the trustee.   Prosser, 2018 WL 3041067, at *9. The Trustee argues that Prosser is distinguishable from the instant case because Prosser involved a homestead exemption claimed under § 522(b)(3)(B), whereas the Debtor's homestead exemption in this case was claimed under New York CPLR § 5206, which protects the homestead interest only from "application to satisfy a money judgment," and would not protect it from recovery under § 506(c). [Motion at ¶ 23; ECF No. 166.] However, the statutory basis for the exemption is irrelevant because the conclusion is the same: exempt property cannot be reached by the trustee or creditors unless there is an express exception under the Bankruptcy Code or New York law.

The Trustee further argues that the issue in this case, unlike Prosser, is not whether the sale proceeds attributable to the Debtor's homestead exemption should be paid to the Trustee or the

Debtor, but instead whether the Trustee can reach the homestead exemption under § 506(c) after a sale was approved by the Court, or at least whether the Trustee can recover from the IRS's liens on it, given that the IRS's liens now exceed the entire exemption amount. Put differently, the Trustee contends that the Stipulation is distinguishable from Law v. Siegel and Prosser because the money would no longer be coming from the Debtor's homestead exemption under § 105(a) as initially sought by the Trustee in the Surcharge Motion and would now be coming from the IRS under § 506(c).

The Trustee's argument must be rejected because, again, it is based on a distinction without a difference. The distinguishable facts between Prosser and the instant case are irrelevant to Prosser's conclusion, and to the determination in this case. As Prosser explained:

> Sale of the exempt property to satisfy a damages award for a debtor who was found in civil contempt would amount to the Bankruptcy Court either withdrawing the homestead exemption or creating an additional exception to § 522's exemptions. Because the statute does not contain such a wrongful conduct exception to section 522—even on a finding of contempt of court—the Court would be creating an additional exception to the existing exemptions—or at the very least, surcharging the exemption—thereby running afoul of Law's pronouncements in *dicta*.

Prosser, 2018 WL 3041067, at *7.

Prosser further observed that, "[w]hen distilled to its essence, the remedy selected by the Bankruptcy Court to address debtor misconduct constitutes a surcharge of exempt property or the creation of a misconduct exception to section 522." Id. Relying on Law and its progeny, which found exemptions to be absolute unless denied or disallowed under applicable law, Prosser rejected the trustee's attempt to use exempt proceeds from the sale of a homestead to satisfy a sanctions award. Id. at *8-9. What Prosser prohibits - the creation of an additional exception to exemptions - is precisely what the Trustee is attempting to do through the Stipulation.

The Trustee and the IRS assert that the Stipulation passes muster under <u>Law v. Seigel</u> because § 506(c) expressly permits the recovery provided for in the Stipulation, and they are not using § 105 to circumvent the Bankruptcy Code.  In support of this argument, the IRS contends that "§ 506(c) is precisely the sort of specific allowance that § 105(a) was not, and functions as an exception to § 522(k)'s general mandate that property exempted is not liable for administrative expenses." [IRS Brief at 8, ECF No. 176.]  Moreover, the IRS further contends that "§ 522(k) should be construed as referring to liability imposed by § 503 and § 507(a)(2) – the provisions that govern the general payment of expenses of administration through § 726." [IRS Brief at 9, ECF No. 176.]

These arguments must be rejected because expenses recoverable under § 506 are not included in the list of exceptions provided by § 522, and § 522(k) only creates an exception for certain administrative expenses.  "[T]he Bankruptcy Code contains express exceptions to the rule that exempted property cannot be used to satisfy pre-petition debts or administrative expenses, and therefore a court may not read additional exceptions . . .  into the statute." <u>In re Mazon</u>, 395 B.R. 742, 750 (M.D. Fla. 2008) (holding that the bankruptcy court lacks authority to impose a surcharge on exempt assets).  "Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." <u>TRW, Inc. v. Andrews</u>, 534 U.S. 19, 28 (2001) (citation omitted)).  "The Code's meticulous—not to say mind-numbingly detailed—enumeration of exemptions and exceptions to those exemptions confirms that courts are not authorized to create additional exceptions." <u>Law</u>, 571 U.S. at 424. As such, the bankruptcy court "may not contravene express provisions of the Bankruptcy Code by ordering that the debtor's exempt property be used to pay debts and expenses for which that property is not liable under the Code." <u>Id.</u> at 427–28.

From the IRS's perspective, it believes the Stipulation's distribution scheme is justified because it contends that it will probably never receive another penny on the liens after the sale proceeds are disbursed and, therefore, by allowing the Trustee to take from its share of the exempt proceeds, the IRS is giving something up. (Tr. 2/8/24 at 7, ECF No. 175.)  However, this position is at odds with the fact that the IRS will maintain its entitlement to payment in full on account of its unpaid liens, irrespective of whether the IRS will ever be able to collect on them.  Under the Stipulation, the unpaid tax liens will survive this bankruptcy and remain as liens on the Debtor's assets, without being reduced by the amount that the Trustee would recover from the Debtor's exempt sale proceeds. Accordingly, this distribution scheme does not resemble the "recovery" contemplated by § 506(c) in the slightest.  "The fact that parties agree to call an apple an orange does not mean that a court must adjudicate that it is an orange." Christensen, 561 B.R. at 197.

For these reasons, § 506(c) may not be used to reimburse the Trustee for costs and expenses incurred in selling the Property in the manner described in the Stipulation because doing so would improperly circumvent the Debtor's right to his homestead exemption.[8] The Court is sympathetic to the Trustee's frustration with the Debtor, whose contemptuous behavior caused a significant increase of administrative expenses in the Trustee's efforts to sell the Property.  However, as the Supreme Court explained in Law:

> We acknowledge that our ruling forces [the trustee] to shoulder a heavy burden resulting from [the debtor's] egregious misconduct, and that it may produce inequitable results for trustees and creditors in other cases.  We have recognized, however, that in crafting the provisions of § 522, "Congress balanced the difficult choices that exemption limits impose on debtors with the economic harm that

---

[8] As an aside, this Court notes that recovery under § 506(c) is limited "to the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c).  The Trustee did not provide fee and expense records to substantiate an amount attributable to disposing of the Property. Rather, the Stipulation only provides estimates and a proposed cap on the Trustee's recovery under § 506(c). [See Stipulation ¶¶ 6, 8, 11, ECF 166-1.]  Additionally, there is no basis for the Trustee to recover fees and costs associated with the preservation or liquidation of the nonexempt cash, given that the Trustee never recovered the nonexempt cash.

> exemptions visit on creditors." The same can be said of the limits imposed on recovery of administrative expenses by trustees. For the reasons we have explained, it is not for courts to alter the balance struck by the statute.

Law, 571 U.S. at 426-27 (citation omitted).

Separately, although it is not a part of the stipulation, the Trustee's motion explains that he tried to negotiate with the IRS based upon In re Gallagher, No. 8-23-70994-las, 2023 WL 7030047 (Bankr. E.D.N.Y. Oct. 25, 2023). In that case, Judge Scarcella overruled a debtor's objection that the trustee's proposed distribution of sale proceeds pursuant to § 724(b) would deprive him of his homestead exemption.  Gallagher, 2023 WL 7030047 at *1-2.  Section 724(b) provides for "an automatic statutory subordination that allows for certain administrative expenses and other unsecured priority claims to be paid before any payment is made to the holder of the tax lien." Id. at *2.   The IRS disputes that § 724(b) is applicable in this case.  However, this Court need not address the applicability of § 724(b) to *exempt* property subject to a federal tax lien, as it is not an issue properly before the Court at this time.

Lastly, although this Court will not approve the Stipulation to the extent it provides for recovery under § 506(c), this Court will approve the Stipulation's alternative remedy of permitting the Trustee to reduce the payment of the homestead exemption by $17,000, accounting for the nonexempt funds that were never turned over by the Debtor.  In the First Contempt Order, this Court, among other things, ruled that the payment to the Debtor on account of his homestead exemption be reduced by $6,760, which was the amount the Debtor improperly expended of the nonexempt funds.  [ECF No. 53.]  That order was affirmed on appeal.  [ECF Nos. 117, 180.]  The Debtor failed to turn over the balance of the nonexempt funds, $10,240, for which contempt

sanctions continue to accrue.[9]   Therefore, the payment of the Debtor's homestead exemption should be reduced, by way of offset, against the full $17,000 of nonexempt funds owed to the estate by the Debtor.  It must be noted that Schedule C is ambiguous as to the amount the Debtor claimed for his homestead exemption.  Although the Debtor claimed a homestead exemption of "100% of the fair market value, up to the statutory limit," which was $170,825 at the time of filing, Schedule C also stated that the Debtor is not seeking a homestead exemption of more than $170,350.  Therefore, the Court cannot calculate the balance due to the Debtor on account of his homestead exemption until that inconsistency is resolved.

**INTENTIONALLY LEFT BLANK**

---

[9] "[B]ecause it arises postpetition, a bankruptcy court's monetary sanction survives the bankruptcy case and is thereafter enforceable through the normal procedures for collecting money judgments." <u>Law</u>, 571 U.S. at 427 (citing 11 U.S. C. § 727(b)).

## <u>CONCLUSION</u>

For the foregoing reasons, the Trustee's motion to approve the Stipulation with the IRS is denied to the extent it seeks to recover costs and expenses under § 506(c) but granted to the extent it seeks to reduce the payment of the Debtor's homestead exemption by the amount of the nonexempt funds owed to the estate by the Debtor.  The Court will issue an order consistent with this decision.



Dated: March 26, 2025
      Brooklyn, New York

                                    **Nancy Hershey Lord**
                             **United States Bankruptcy Judge**